UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERMAN LUNA, JR., ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Civil Action No._____ |
| v. ) | |
| ) | |
| CAVALRY SPV I, LLC and ) | |
| CAVALRY PORTFOLIO SERVICES, LLC ) | |
| and LAW OFFICE OF KEITH S. ) | |
| SHINDLER, LTD. ) | |
| d/b/a THE SHINDLER LAW FIRM ) | |
| d/b/a SHINDLER AND JOYCE, ) | Jury Demanded |
| ) | |
| DEFENDANTS. ) | |

## COMPLAINT

Plaintiff, German Luna, Jr., brings this action to secure redress from unlawful credit and collection practices engaged in by Defendants Cavalry SPV I, LLC ("Cavalry"), Cavalry Portfolio Services, LLC ("CPS"), and Law Office of Keith S. Shindler Ltd. doing business as The Shindler Law Firm also doing business as Shindler and Joyce ("Shindler"). Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), and the Illinois Collection Agency Act, 225 ILCS 425 *et seq*. ("ICAA").

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331, 1337, and 1367, as Defendants do business in the State of Illinois.

2. Venue in this District is proper as to Defendant Cavalry because Defendant does business here and the debt collection activities upon which this Complaint is based were performed here.

3. Venue in this District is proper as to Defendant CPS because it does business here and the debt collection activities upon which this Complaint is based were performed here.

4. Venue in this District is proper as to Defendant Shindler because it does substantial business here, maintains an office here, and the debt collection activities upon which this Complaint is based were performed here.

## PARTIES

5. Plaintiff, German Luna, Jr. ("Plaintiff"), is an individual and resident of Cook County, Illinois, and a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

6. Defendant, Cavalry SPV I, LLC ("Cavalry"), is a Delaware limited liability company with its principal place of business at 500 Summit Lake Dr., Suite 400, Valhalla, NY 10595. It does or transacts business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604. (Exhibit A, Record from Illinois Secretary of State).

7. Defendant Cavalry is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Defendant Cavalry holds a collection agency license from the state of Illinois. (Exhibit B, Record from Illinois Department of Financial & Professional Regulation).

9. Defendant Cavalry is a debt collector that specializes in buying large portfolios of defaulted consumer debts for pennies on the dollar, the full amount of which it then tries to collect through other debt collectors.

10. Cavalry is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA, because it regularly collects defaulted consumer debts via mail, telephone and litigation.

11. Defendant Cavalry Portfolio Services, LLC ("CPS") is a Delaware limited liability company with its principal place of business at 4050 E. Cotton Center, Building 2, Suite 20, Phoenix, AZ 85040. CPS does or transacts business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604. (Exhibit C, Record from Illinois Secretary of State).

12. Defendant CPS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA, and regularly attempts to collect debts held in the name of Cavalry SPV I, LLC.

13. Defendant CPS holds a collection agency license from the State of Illinois. (Exhibit D, Record from Illinois Department of Financial & Professional Regulation).

14. Defendant CPS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA because it regularly collects defaulted consumer debts via mail, telephone and litigation..

15. CPS regularly collects debts owed or due or asserted to be owed or due to Cavalry.

16. Defendant Law Office of Keith S. Shindler, Ltd. a.k.a. The Shindler Law Firm a.k.a. Shindler and Joyce ("Shindler"), is a law firm organized as an Illinois corporation with principal offices and registered agent at 1990 E. Algonquin Rd., Ste. 180, Schaumburg, IL 60173. (Exhibit E, Record from the Illinois Secretary of State).

17. The practice of Shindler consists of the collection of alleged defaulted consumer debts owed to others. Shindler is engaged in the business of collecting consumer debts in this State where it regularly collects or attempts to collect debts owed or due, or asserted to be owed or due another, and whose principal purpose is the collection of defaulted consumer debts using the mails, telephone and litigation

18. Shindler regularly files collection lawsuits in Illinois on behalf of Cavalry, and acts as a debt collector, as defined by 15 U.S.C. § 1692a(6) of the FDCPA, because it regularly uses the mails, telephone and litigation to collect, or attempt to collect, directly or indirectly, defaulted consumer debts.

## FACTS COMMON TO ALL COUNTS

19. Plaintiff incurred a debt for the purchase of goods and/or services used for personal, family or household purposes, originally for a Washington Mutual Bank consumer credit card account ("alleged debt"). The alleged debt is thus a debt as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA.

20. Due to financial difficulties, Plaintiff was unable to pay the alleged debt and it went into default.

21. According to Cavlary, the account was charged off on April 30, 2008. (Exhibit F, State Action, affidavit ¶ 4.b.)

22. The account was charged off in the amount of $7795.31.

23. In Illinois, an agreement for a credit card is an unwritten contract.

24. Under Illinois law, the statute of limitations on an unwritten agreement is "5 years next after the cause of action accrued." See 735 ILCS 5/13-205.

25. Here, the cause of action accrued upon the date of default of the alleged account.

26. As the account was charged off on April 30, 2008, the date of default occurred prior to the date the account was charged off.

27. The account was charged off in the amount of $7798.31.

28. The statute of limitation for which Plaintiff could be sued on the alleged debt expired prior to April 30, 2013.

29. On or around July 2, 2013, Defendant Cavalry purchased the alleged debt.

30. In or around January, 2014, an agent or employee of Cavalry placed a telephone call to Plaintiff in connection with the collection of the debt.

31. During the pendency of the 2014 conversation, the Cavalry's agent or employee did not inform Plaintiff that the debt was past the statute of limitations and that it could not sue Plaintiff on the debt.

32. Not knowing that he could not be sued on the alleged debt, Plaintiff, fearful that litigation could be brought against him, agreed to make payments toward the debt. Plaintiff agreed to provide Cavalry with his checking account information whereby CPS would make ACH check payments to itself from Plaintiff's checking account on the last day of the month beginning in January, 2014.

33. CPS effected 6 ACH check payments totaling $508.25 from Plaintiff's account. Payments were made as follows:

| Date | Amount |
|---|---|
| January 31, 2014 | $81.65 |
| February 29, 2014 | $81.65 |
| March 31, 2014 | $81.65 |
| April 30, 2014 | $81.65 |
| May 31, 2014 | $100.00 |
| June 30, 2014 | $81.65 |

34. The balance on the alleged account was $7287.06 after Plaintiff made the six payments totaling $508.25 to Cavalry and CPS in the first half of 2014.

35. Cavalry failed to credit some of all of the payments to the alleged debt.

36. Cavalry subsequently retained or hired Shindler to attempt to collect the alleged debt from Plaintiff.

37. Cavalry directed, ratified and approved the actions taken by Shindler to collect the alleged debt from Plaintiff.

38. Shindler was at all times authorized to act on behalf of Cavalry to attempt to collect the alleged debt from Plaintiff.

39. On or around March 10, 2015, Shindler filed a complaint on behalf of Cavalry against Plaintiff to collect the alleged debt, which complaint was filed in the Circuit Court of Cook County, Fourth Municipal District, and styled *Cavalry SPV I, LLC, as successor to Washington Mutual Bank vs. German Luna Jr*, Case No. 15-M4-001257. ("State Action"). (Exhibit F, State Action, complaint).

40. Defendants, in the State Action, falsely represented that Plaintiff owed over $360 more on the alleged debt than he did.

41. Specifically, Defendants attempted to collect at least $367 more on the alleged debt.

42. The statute of limitations on the alleged debt that was the subject of the State Action ended on or around May 27, 2013.

43. 225 ILCS 425/8.6(a) of the Illinois Collection Agency Act requires that:

> **Debt buyers initiating actions upon an obligation arising out of a consumer debt shall be commenced within the applicable statute of limitations period.**

44. Cavalry filed its State Action complaint against Plaintiff almost two years after the applicable 5 year statute of limitations period had run, thereby violating 225 ILCS 425/8.6(a) of the ICAA.

45. Cavalry and Shindler filed their lawsuit against Plaintiff in the Fourth Judicial District, instead of the First Judicial District of Cook County, where Plaintiff resided.

46. As of the first week of February, 2014, through the date of the filing of this Complaint, Plaintiff has resided at 5359 S. Kildare Ave., Chicago, IL 60632 ("Chicago address") which is located in the First Judicial District of Cook County.

47. Section 1692i(a) of the FDCPA provides:

> **Venue**
> **Any debt collector who brings any legal action on a debt against any consumer shall—**
> **. . . (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—**
> **(A) in which such consumer signed the contract sued upon; or**
> **(B) in which such consumer resides at the commencement of the action.**

48. Defendants Cavalry and Shindler failed to file the lawsuit against Plaintiff in the judicial district in which the consumer resides, in violation of 15 U.S.C. § 1692i(a)(2). *See Suesz v. Med-1 Solutions, LLC*, 13-1821, 2014 WL 2964771 (7th Cir. July 2, 2014).

49. On or around March 10, 2015, Cavalry, by its attorneys Shindler, caused to be issued a summons in the State Action requesting that the Sheriff's Office of Cook County serve Plaintiff at 1400 S. 61st Ct., Cicero, IL 60804 ("Cicero address"). (Exhibit F, State Action, summons).

50. On or around March 10, 2015, Plaintiff did not reside at the Cicero address. In fact, Plaintiff had not lived at the Cicero address since on or around the first week of February, 2014, over one year before Plaintiff filed its State Action and the summons in that Action was issued.

51. Shindler provided the Sheriff's Office of Cook County with the false address for Plaintiff when it knew or should have known that Plaintiff did not reside at that address.

52. Shindler provided the Sheriff's Office of Cook County with the false address for Plaintiff when it knew or should have known that Plaintiff resided in the First Municipal District, not the Fourth Municipal District.

53. Plaintiff was never served with the summons and complaint in the State Action and was unaware of the action against him in the Fourth Municipal District.

54. Defendants Cavalry and Shindler conspired to deprive Plaintiff of equal protection of the law, namely to deprive him of his due process right to proper notice of the lawsuit, in order to obtain a default judgment against Plaintiff.

55. Defendants Cavalry and Shindler falsely represented the amount of the debt in the State Action.

56. On April 27, 2015, an ex-parte default judgment was entered against Plaintiff in the state action for $7657.36 plus costs. (Exhibit G, Order and Memorandum of Judgment).

57. The default judgment was a direct and proximate result of Cavalry and Shindler placing a false address on the summons for service of process that Cavalry and Shindler knew, or should have known, Plaintiff did not reside at.

58. The judgment appeared on Plaintiff's TransUnion, Experian, and Equifax credit reports some time thereafter.

59. After entry of the ex-parte judgment, Defendant Shindler executed documents effecting wage deductions from Plaintiff, including a wage deduction affidavit which falsely stated that Plaintiff is indebted to Cavalry, to induce Plaintiff to believe that Cavalry was entitled to collect a debt from him in the manner described, and in the amount sought, in said documents. (Exhibit H, Affidavit For Wage Deduction).

60. Defendant Shindler misrepresented both the character and legal status of the alleged debt, and used false representations to collect the allege debt, when it presented and filed with the Court a false affidavit for wage deduction, which affidavit was thereafter forwarded to Mr. Luna's employer, to induce him to believe that the deduction efforts were lawful, when they in fact were not.

61. Section 1692f of the FDCPA states in relevant part that a debt collector, may not "use unfair or unconscionable means to collect or attempt to collect any debt."

62. Defendants Cavalry and Shindler's act of inserting a false address for Mr. Luna, filing a false affidavit of service, and filing a false affidavit for wage deduction, represented unfair and unconscionable means to collect or attempt to collect a debt.

63. On October 13, 2015, Plaintiff's employer notified him that his wages would be garnished as a result of the State Action.

64. October 13, 2015, is when Plaintiff first discovered that the State Action had been filed against him.

65. Plaintiff subsequently retained and paid Rob Harrer of The Law Office of Robert W. Harrer, P.C. to represent him in the State Action.

66. Plaintiff filed a Motion to Quash Service and Vacate Default Judgment ("Motion") in the State Action on November 19, 2015.

67. On December 7, 2015, the court in the State Action granted Plaintiff's Motion thereby quashing service, vacating the ex-parte judgment, quashing the wage deduction order, and requiring Defendant to return garnished wages in the amount of $1500.00 to Plaintiff. (Exhibit I, Order in State Action).

68. During January and February, 2016, Plaintiff attempted to purchase a home.

69. Plaintiff submitted a mortgage application to enable him to purchase the home but was denied a mortgage for the purchase of the home.

70. Plaintiff was denied a mortgage, in part, because of the ex-parte default judgment that Cavalry, through its attorneys Shindler, had obtained against him, appeared on his credit reports.

71. The FDCPA is a strict liability statute, it does not require a Plaintiff to show intentional conduct by the debt collector in order to be entitled to damages. *Parkis v. Arrow Fin. Servs.*, No. 07 C 410, 2008 U.S. Dist. LEXIS 1212, at *22 (N.D. Ill. Jan. 8, 2008).

72. As a debt collector, Cavalry may be held vicariously liable for Shindler's and CPS's collection activity. (See *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Circ. 1994); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000)).

73. Cavalry authorized, directed, and ratified every action taken by Shindler and CPS on its behalf, and is liable for the acts and omissions of Shindler and CPS, committed in connection with efforts to collect the alleged debt from Plaintiff. (See *Fox*

*v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3rd Cir. 2000)).

74. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. See *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

75. Plaintiff was damaged as a direct and proximate result of Defendants' conduct in that he incurred financial damages in that he had to hire an attorney to represent him in the State Action, loss of use of wages that were wrongfully garnished, denied credit when attempting to secure a mortgage for the purchase of a home, and suffered, *inter alia*, emotional distress, anxiety, fear, embarrassment, aggravation, restlessness, sleeplessness, inconvenience and feelings of depression, helplessness and hopelessness, all as a result of Defendants' actions.

**COUNT I—VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq*. – DEFENDANTS CAVALRY, CPS, and SHINDLER**

76. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

77. In its attempts to collect the debt allegedly owed by Plaintiff, Defendant PRA violated the FDCPA, 15 U.S.C. § 1692 *et seq*. in one or more of the following ways:

    a) Defendants violated 15 U.S.C. § 1692d when they filed the State Action against Plaintiff in an attempt to collect a debt when it knew or should have known that the statute of limitations had expired on the alleged debt, the natural consequence of which was to harass, oppress, or abuse Plaintiff;

    b) Defendants violated 15 U.S.C. § 1692d when the placed a false address on the summons for service in the State Action when it knew or should have known that Plaintiff did not reside at the address at that time, the natural consequence of which was to harass, oppress, or abuse Plaintiff;

<2.
c) Defendants violated 15 U.S.C. § 1692e by making false, misleading or deceptive representations in connection with the collection of a debt when it filed its affidavit of service in the State Action stating that Plaintiff had been served with the State Action summons and complaint when he had not;

d) Defendants violated 15 U.S.C. § 1692e by making false, misleading or deceptive representations in connection with the collection of a debt when they falsely stated that Plaintiff owed $7657.36 to Defendant Cavalry in its State Action when he did not;

e) Defendants violated 15 U.S.C. § 1692e(2) when they filed the State Action against Plaintiff after the statute of limitations had expired, thereby making false, misleading or deceptive representations in connection with the collection of a debt, specifically that the alleged debt could legally be sued upon, when it could not;

f) Defendants violated 15 U.S.C. § 1692e(2)(A) when they falsely represented the character, amount or legal status of the alleged debt in the State Action by representing that the alleged debt was legally enforceable when it was not as the statute of limitations on the alleged debt had expired and Plaintiff could not be sued on the debt;

g) Defendants violated 15 U.S.C. § 1692e(2)(A) when they falsely represented the character, amount or legal status of the alleged debt when they falsely represented in the State Action that Plaintiff owed an amount that he did not owe;

h) Defendants violated 15 U.S.C. § 1692e(5) when they filed the State Action against Plaintiff after the statute of limitations had expired, thereby threatening to take action that cannot legally be taken;

i) Defendants violated 15 U.S.C. § 1692e(10) when they used a false representation or deceptive means to attempt to collect the alleged debt when they falsely represented in the State Action that Plaintiff owed an amount that he did not owe;

j) Defendants violated 15 U.S.C. § 1692e(10) when they used a false representation or deceptive means to attempt to collect the alleged debt when they falsely represented on the State Action summons that Plaintiff lived at the Cicero address when he did not;

k) Defendants violated 15 U.S.C. § 1692e(10) when they used a false representation or deceptive means to attempt to collect the alleged debt when they falsely represented that Plaintiff had been served in the State Action when he had not been;

    l)    Defendants violated 15 U.S.C. § 1692e(10) when they used a false representation or deceptive means to attempt to collect the alleged debt when they falsely represented that Plaintiff lived in the Fourth Municipal District, and thereby could be sued in that district, when in fact he lived in the First Municipal District;

    m)    Defendants violated 15 U.S.C. § 1692f when they placed a false address on the summons for service in the State Action, thereby using unfair or unconscionable means in an attempt to collect a debt.

    n)    Defendants violated 15 U.S.C. § 1692f(1) when they attempted to collect $7657.36 from Plaintiff, an amount not authorized by the agreement creating the alleged debt or authorized by law.

    o)    Defendants violated 15 U.S.C. § 1692f(1) when they attempted to collect $7657.36 from Plaintiff, an amount not authorized by the agreement creating the alleged debt or authorized by law. Specifically, Defendants filed the state action for that amount after the statute of limitations had expired on the alleged debt.

    p)    Defendants violated 15 U.S.C. § 1692i(a)(2) when it filed the State Action in a judicial district or other similar entity other than the one where Plaintiff resided or signed the contract sued upon.

78.    As a result of Defendant's actions, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney fees.

WHEREFORE, Plaintiff German Luna, Jr. requests that judgment be entered in his favor against Defendants Cavalry, CPS, and Shindler, for the following:

    a.    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2) against each collector;

    b.    Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    c.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    d.    Such other or further relief as this Court deems proper.

## COUNT II—VIOLATIONS OF THE ILLINOIS COLLECTION AGENCY ACT, 225 ILCS 425 *et seq*. – DEFENDANTS CAVALRY and CPS

79. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

80. Cavalry is a "collection agency" as defined in the Illinois Collection Agency Act, 225 ILCS 425/2 *et seq*.

81. Cavalry is a "debt buyer" as defined in the Illinois Collection Agency Act, 225 ILCS 425/2 *et seq*.

82. CPS is a "collection agency" as defined in the Illinois Collection Agency Act, 225 ILCS 425/2 *et seq*.

83. CPS is a "debt buyer" as defined in the Illinois Collection Agency Act, 225 ILCS 425/2 *et seq*.

84. Cavalry holds an Illinois Collection Agency License. (Exhibit B, Record from the Illinois Department of Financial and Professional Regulation).

85. CPS holds an Illinois Collection Agency License. (Exhibit D, Record from the Illinois Department of Financial and Professional Regulation).

86. Cavalry and CPS violated the following provisions of the Illinois Collection Agency Act, 225 ILCS 425 *et seq*.:

225 ILCS 425/8.6(a) provides that:

> **Debt buyers initiating actions upon an obligation arising out of a consumer debt shall be commenced within the applicable statute of limitations period.**

Cavalry violated Section 8.6(a) of the ICAA when it filed its State Action against Mr. Luna after the applicable statute of limitations period had passed.

Cavalry and CPS violated 225 ILCS 425/9(a) of the ICAA by:

…

**(24) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.**

…

**(30) Misrepresenting the amount of the debt alleged to be owed.**

…

**(31) Representing that an existing debt may be increased by the addition of attorney's fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt.**

…

**(33) Collecting or attempting to collect any interest or other charge or fee in excess of the actual debt unless such interest or other charge or fee is expressly authorized by the agreement creating the debt unless expressly authorized by law…**

…

**(35) Engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public.**

87. A private right of action exists for violation of the ICAA against Defendants. *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

88. Mr. Luna suffered actual damages, including financial damages as well as emotional distress, as a result of Cavalry and CPS's actions, including loss of time and money by having to hire an attorney, and for having to file and pay for attorney fees and costs in the State Action, including but not limited to the payment of an appearance fee in the State Action, Plaintiff's loss of the use of the wrongfully garnished wages, denial of credit when attempting to purchase a home, and suffered, *inter alia*, emotional distress, anxiety, fear, embarrassment, aggravation, restlessness, sleeplessness, inconvenience and feelings of depression, helplessness and hopelessness.

WHEREFORE, Plaintiff German Luna, Jr. requests that judgment be entered in his favor against Defendants Cavalry and CPS for the following:

a. Compensatory damages;

      b. Punitive damages;

      c. Costs; and

      d. Such other or further relief as this Court deems just and proper under the circumstances.

Respectfully Submitted,

By: /s/ Robert W. Harrer

**The Law Office of Robert W. Harrer, P.C.**
111 W. Washington St., Suite 1360
Chicago, Illinois 60602
Tel. 312-600-8466
Fax 312-610-5646
rob.harrer@harrerlaw.com

## JURY DEMAND

Plaintiff demands trial by jury.

By: /s/ Robert W. Harrer
      Robert W. Harrer

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ Robert W. Harrer
      Robert W. Harrer

**The Law Office of Robert W. Harrer, P.C.**
111 W. Washington St., Suite 1360
Chicago, Illinois 60602
Tel. 312-600-8466
Fax 312-610-5646
rob.harrer@harrerlaw.com

## **DOCUMENT PRESERVATION DEMAND**

      Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

                                                                By: /s/ Robert W. Harrer
                                                                     Robert W. Harrer